RECORD NO. 13-1517

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

ROBERT E. GRAHAM,

*Plaintiff-Appellee,*

v.

NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

OPENING BRIEF OF APPELLANT

MICHAEL W. CAREY
JOHN A. KESSLER
DAVID R. POGUE
CAREY, SCOTT, DOUGLAS & KESSLER, PLLC
901 Chase Tower
707 Virginia Street East
Post Office Box 913
Charleston, West Virginia 25323
(304)345-1234

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1517__    Caption: __Robert E. Graham v. National Union Fire Ins.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Robert E. Graham__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
         (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                          ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: __/s/ John A. Kessler_____        Date: ____April 24, 2013_____

Counsel for: __Appellant, Robert E. Graham_____

## CERTIFICATE OF SERVICE
**************************

I certify that on ____April 24, 2013____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

__/s/ John A. Kessler_____                    _____April 24, 2013_____
        (signature)                                            (date)

07/19/2012                          - 2 -
SCC

# TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    II.   The District Court Erred in Concluding that Graham is Not
         Entitled to Damages for Aggravation and Inconvenience
         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    III.  The District Court Erred in Concluding that Graham is Not
         Entitled to Prejudgment Interest on His Special Damages for
         Breach of Contract
         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 25

i

## TABLE OF AUTHORITIES

### CASES                                                                 PAGES

Bowyer v. Hi-Lad, Inc.,
609 S.E.2d 895 (W.Va. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Bradley Corp. v. Zurich Ins. Co.,
984 F. Supp. 1193 (E.D. Wis. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Elmore v. State Farm Mut. Auto. Ins. Co.,
504 S.E.2d 893, 896-97 (W.Va. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 15

Graham v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,
474 F. App'x 956 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Grove v. Myers,
382 S.E.2d 536 (W.Va. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20, 23, 24

Hayseeds Inc. v. State Farm Fire & Cas.,
352 S.E.2d 73 (W.Va. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 7, 11, 13

Hi-Mill Mfg. Co. v. Aetna Cas. & Sur. Co.,
884 F. Supp. 1109 (E.D. Mich. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22, 23

Holland v. Washington Homes, Inc.,
487 F.3d 208 (4th Cir.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Homeland Training Center, LLC v. Summit Point Auto. Research Center,
594 F.3d 285, 290 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Loudin v. Nat'l Liab. & Fire Ins. Co.,
716 S.E.2d 696 (W.Va. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 14, 17, 18

Marshall v. Saseen,
450 S.E.2d 791 (W.Va. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 16

Miller v. Fluharty,
500 S.E.2d 310 (W.Va. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 12, 13, 16, 17

Morrison v. Haynes,
452 S.E.2d 394, 398 (W.Va. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

 S. Farm Bureau Cas. Ins. Co. v. Watkins,
386 S.W.3d 6 (Ark. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Seaway Port Auth. of Duluth v. Midland Ins. Co.,
430 N.W.2d 242 (Minn. Ct. App. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Sherwin-Williams Co. v. Certain Underwriters at Lloyd's London,
813 F. Supp. 576 (N.D. Ohio 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Simmental Ass'n v. Coregis Ins. Co.,
282 F.3d 582 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

State ex. rel. Chafin v. Mingo County Comm'n,
434 S.E.2d 40 (W.Va. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20, 21

Tackett v. Am. Motorists Ins. Co.,
584 S.E.2d 158 (W.Va. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Wells v. Liddy,
186 F.3d 505 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

**STATUTES**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

W.Va. Code § 56-6-31 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

**REGULATIONS**

W. Va. C.S.R. § 114–14–2.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

 W. Va. C.S.R. § 114–14–2.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

iii

## JURISDICTIONAL STATEMENT

The United States District Court for the Southern District of West Virginia had subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). On March 7, 2013, the District Court entered an Order granting summary judgment in favor of Defendant-Appellee National Union Insurance Co. of Pittsburgh Pennsylvania (hereinafter "National Union"), and denying Appellant Robert E. Graham's cross-motion for partial summary judgment. On March 14, 2013, the District Court entered an order removing the case from the court's docket. On March 29, 2013, Appellant Robert E. Graham (hereinafter "Graham") filed a timely notice of appeal. The same day, Graham also filed a motion pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure, asking the District Court to reconsider its rulings and/or to certify questions to the West Virginia Supreme Court of Appeals. On April 19, 2013, the District Court entered an Order denying Graham's motion. Based on the foregoing, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.     Whether the District Court erred in concluding that Graham, as a first-party insured who substantially prevailed against his insurer in a suit regarding the latter's duty to defend Graham under a wrongful act liability insurance policy, is not entitled to damages for aggravation and inconvenience under Hayseeds, Inc. v. State

Farm Fire & Cas., 352 S.E.2d 73 (W.Va. 1986) and its progeny.

2.    Whether the District Court erred in concluding that Graham is not entitled to prejudgment interest on his special damages for breach of contract.

## STATEMENT OF THE CASE

This is an appeal from the United States District Court for the Southern District of West Virginia's Order granting National Union's motion for summary judgment, and denying Graham's cross-motion for partial summary judgment. Graham filed suit below alleging that National Union breached its contractual duty to defend him in a lawsuit brought by the State of West Virginia. National Union moved for summary judgment arguing that four exclusions in the relevant insurance policy applied to relieve National Union of any duty to defend Graham. Graham filed a cross-motion for summary judgment arguing that National Union had a duty to defend under the plain language of the policy and that none of the exclusions cited by National Union applied.

On February 17, 2011, the District Court granted National Union's motion for summary judgment, and denied Graham's cross-motion for summary judgment, finding that one of the exclusions cited by National Union applied to defeat coverage. On March 9, 2011, Graham filed a timely Notice of Appeal. On April 11, 2012, this Court reversed the District Court's order, and held that National Union did have a

duty to defend Graham against the State's lawsuit.

On remand, the only issues remaining in the case related to the types of damages that Graham is entitled to recover from National Union. On November 21, 2012, National Union filed a motion for summary judgment arguing, *inter alia*, that Graham is not entitled to damages for aggravation and inconvenience resulting from its refusal to provide Graham a defense of the underlying suit, nor is Graham entitled to prejudgment interest on his special damages. Graham filed a cross-motion for partial summary judgment, arguing that he is indeed entitled to these remedies. On March 7, 2013, the District Court entered an order granting National Union's motion for summary judgment, and denying Graham's motion for partial summary judgment. In doing so, the District Court held that Graham was entitled to neither damages for aggravation and inconvenience nor prejudgment interest. On March 14, 2013, the District Court entered an additional order awarding final judgment in the amount of $278,273.56 for attorney fees Graham incurred in defending the underlying lawsuit and pursuing this case, and removing the case from the docket. On March 29, 2013, Graham filed a timely Notice of Appeal.

## STATEMENT OF THE FACTS

The facts in this case are not in dispute. Graham was at all times relevant hereto the Executive Director of the Council on Aging, Inc. and All Care Home &

3

Community Services, Inc., two not-for-profit corporations organized pursuant to West Virginia Code § 31E-1-101, et seq. (hereinafter "the Corporations"). On or about April 19, 2004, the State of West Virginia (hereinafter "the State") filed a lawsuit against Graham and the Corporations alleging that Graham had misappropriated, or otherwise improperly used the resources of the Corporations for his personal enrichment and other unauthorized purposes and, further, that he had exercised an inappropriate degree of control over the resources of the Corporations with the result that he unjustly enriched himself.

At all times relevant hereto, the Council on Aging was an insured under a National Union Wrongful Act Liability insurance policy (hereinafter "the policy"), and Graham, in his role as Executive Director of the Council on Aging, was also an insured under the policy. Under the terms of the policy, National Union had a duty to defend the insureds from any and all actions within the scope of the policy. Accordingly, on or about April 27, 2004, counsel for Graham wrote a letter to National Union's authorized representative providing National Union with notice of the State's lawsuit against Graham and requesting coverage. On or about April 29, 2004, National Union's authorized representative wrote a letter to the President of the Corporations advising her that National Union would not provide coverage for or defend against the State's lawsuit against Graham.

4

As a result of National Union's refusal to provide coverage, Graham was forced to defend the State's lawsuit at his own cost. On or about September 24, 2009, the Circuit Court of Kanawha County granted summary judgment in Graham's favor and ordered that the State's lawsuit be dismissed and removed from the docket. Thereafter, on March 23, 2010, Graham filed the instant action in the Circuit Court of Mercer County, West Virginia. On or about April 6, 2010, National Union removed the case to the United States District Court for the Southern District of West Virginia. Then on April 27, 2010, National Union filed an Answer to Graham's Complaint.

After National Union filed its Answer, the only issues in dispute related to the interpretation of the policy concerning coverage. On July 9, 2010, Defendant National Union filed a motion for summary judgment asking the District Court to find that National Union had no duty to defend Graham in the State's suit. On July 30, 2010, Graham responded to that motion, and submitted a cross-motion for summary judgment. National Union's motion for summary judgment cited four exclusions in the policy as the basis for National Union's argument that it had no duty to defend Graham. On February 17, 2011, the District Court entered an Order finding that one of these exclusions, the so-called "wages, salary, and benefits exclusion," applied, and thus, National Union was entitled to summary judgment. Concordantly, the

5

District Court denied Graham's motion for summary judgment.

Graham appealed the District Court's February 17, 2011 Order to this Court. On April 11, 2012, this Court reversed and remanded the District Court's ruling, holding that National Union did have a duty to defend Graham against the State's lawsuit. *See* Graham v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 474 F. App'x 956 (4th Cir. 2012).[1]

In the wake of this Court's April 11, 2012 ruling, the only issues remaining in the case related to the types and amount of damages that Graham is entitled to recover from National Union. Graham submits that he is entitled to the following categories of damages: (1) the special damages that he incurred as a result of National Union's breach of its contractual duty to defend (*i.e.* the attorney fees, expenses, and advanced costs that Graham incurred in defending against the State's lawsuit); (2) interest on the aforementioned special damages; (3) the attorney fees, costs, and expenses incurred in prosecuting the instant action against National Union; and (4) damages

---

[1] Because the issue of National Union's duty to defend was the subject of a prior appeal to this Court (No. 11-1222), and the facts relating to that issue are not in dispute, the parties did not believe it was necessary to include the pleadings and other documents relating to the issue of National Union's duty to defend in the Appendix to the instant appeal. As such, the parties have only included the relevant pleadings and portions of the record which have been filed in this case since this Court's April 11, 2012 decision finding that National Union had a duty to defend Graham. If this was in error, the parties will submit an amended Appendix upon the Court's request.

for aggravation and inconvenience, pursuant to <u>Hayseeds, Inc. v. State Farm Fire &amp; Cas.</u>, 352 S.E.2d 73 (W.Va. 1986) and its progeny.

On November 21, 2012, National Union filed a motion for summary judgment. In its supporting memoranda, National Union admitted that Graham is entitled to recover reasonable attorney fees and costs for both his defense of the State's action and the prosecution of the instant action.  It further agreed that the total amount Graham is entitled to recover as fees and costs for the defense of the State's action is $208,705.17.  App. at p. 170.[2]  However, National Union argued, *inter alia*, that (1) Graham is not entitled to damages for aggravation and inconvenience under <u>Hayseeds</u> and its progeny, and (2) Graham is not entitled to prejudgment interest on his special damages.  App. at pp. 168-176.  Graham filed a response and cross-motion for partial summary judgment, arguing, *inter alia*, that he is entitled to damages for aggravation and inconvenience resulting from National Union's refusal to provide him a defense in the underlying suit, as well as prejudgment interest on his special damages.  App. at pp. 177-189.

On March 7, 2013, the District Court entered an Order granting National Union's motion for summary judgment, and denying Graham's cross-motion for partial summary judgment.   App. at p. 210. The District Court agreed with National

---

[2] References to the Joint Appendix will be made as "App. at p. ____".

7

Union that Graham was entitled to neither damages for aggravation and inconvenience nor prejudgment interest. Thus, the District Court ruled that Graham was only entitled to recover (1) the reasonable attorney's fees and costs associated with his defense of the State's lawsuit (his special damages), and (2) the reasonable attorney fees and costs he incurred in pursuing the instant lawsuit against National Union. App. at pp. 221-227.

At the end of the District Court's March 7, 2013 Order, the District Court directed Graham to submit a renewed demand for damages in an amount consistent with the District Court's rulings. App. at p. 227. However, on March 14, 2013, the District Court vacated this part of its Order, and instead awarded final judgment to Graham in the amount of $278,273.56[3] and dismissed the case from the active docket. App. at pp. 229-231.

On March 29, 2013, Graham filed a notice of appeal, as well as a motion pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure, asking the District Court to reconsider its rulings and/or to certify questions to the West

---

[3] The final judgment amount of $278,273.56 consisted of $208,705.17 for attorney fees, costs and expenses incurred in the defense of the State action and $69,568.39 in attorney fees for pursuing the lawsuit against National Union. The District Court calculated the attorney fees for the case against National Union by adopting the one-third (1/3) contingent fee agreement Graham had with his attorneys as a reasonable attorney fee, i.e. 1/3 x 208,705.17 = 69,568.39.

Virginia Supreme Court of Appeals. App. at pp. 232-233, 235. On April 19, 2013, the District Court entered an Order denying Graham's motion, and thus the instant appeal proceeded in accordance with Rule 4(a)(4) of the Federal Rules of Appellate Procedure. App. at p. 253.

## SUMMARY OF THE ARGUMENT

The District Court ruled that Graham was not entitled to damages for aggravation and inconvenience under <u>Hayseeds</u> because the Wrongful Act Liability policy at issue in this case was "third-party insurance," and such damages are only available to insureds who substantially prevail against insurers in lawsuits involving "first-party insurance." However, the West Virginia Supreme Court of Appeals has never held that damages for aggravation and inconvenience are only available in cases involving "first party insurance." Furthermore, in explaining the public policy underlying <u>Hayseeds</u>, the West Virginia Supreme Court of Appeals has stated that its goal is for all policyholders to get the benefit of their contractual bargain without having to sue their insurers to vindicate their rights. This policy goal applies equally to all first-party policyholders, regardless of whether their policies are "first party insurance" or "third party insurance." Thus, in keeping with the public policy set forth by the West Virginia Supreme Court of Appeals, Graham is entitled to damages for aggravation and inconvenience under <u>Hayseeds</u> and its progeny.

9

As to prejudgment interest, the District Court found that because Graham's special damages are comprised entirely of attorney fees and litigation expenses, Graham is not entitled to prejudgment interest on his special damages. However, the West Virginia Supreme Court of Appeals has held that prejudgment interest "is to be recovered" on special or liquidated damages if the amount of such damages is certain or reasonably ascertainable. The West Virginia Supreme Court of Appeals has never held or otherwise indicated that this rule does not apply in a breach of contract action where the plaintiff's special damages happen to be comprised of attorney fees. Because Graham's special damages are not only reasonably ascertainable, but have already been calculated and ordered, Graham is entitled to prejudgment interest.

## ARGUMENT

## I.     STANDARD OF REVIEW

The standard of review applicable to a district court's grant of summary judgment is de novo. Homeland Training Center, LLC v. Summit Point Auto. Research Center, 594 F.3d 285, 290 (4th Cir. 2010)(*citing* Holland v. Washington Homes, Inc., 487 F.3d 208, 213 (4th Cir.2007)). Where federal jurisdiction is based on diversity of citizenship, as in the present case, this Court applies the substantive law of the forum state. Id. Thus, the substantive law of West Virginia applies to the issues presented in the instant appeal.

10

## II.   THE DISTRICT COURT ERRED IN CONCLUDING THAT GRAHAM IS NOT ENTITLED TO DAMAGES FOR AGGRAVATION AND INCONVENIENCE.

The West Virginia Supreme Court of Appeals has long adhered to the rule that "[w]henever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, *and damages for aggravation and inconvenience*." *See* Syl. Pt. 1, Hayseeds, Inc. v. State Farm Fire & Cas., 352 S.E.2d 73 (W.Va. 1986) (emphasis added). Although the oft-cited holding from Hayseeds refers to a policyholder who substantially prevails against its insurer in a *property damage* suit, the policy behind the holding applies equally to other types of insurance.

As the West Virginia Supreme Court of Appeals has explained, the policy underlying Hayseeds "is that a policyholder buys an insurance contract for peace of mind and security, not financial gain, and certainly not to be embroiled in litigation." Miller v. Fluharty, 500 S.E.2d 310, 319 (W.Va. 1997); *see also* Elmore v. State Farm Mut. Auto. Ins. Co., 504 S.E.2d 893, 896-97 (W.Va. 1998)(observing that the rule allowing for the recovery of aggravation and inconvenience damages "is based on the fact that 'when an insured purchases a contract of insurance, he buys insurance – not a lot of vexatious, time-consuming, expensive litigation with his insurer.'"). The

11

Miller Court further observed that "[w]hen an insurance carrier refuses to pay *any type of first-party claim* . . . , the policyholder may be compelled to participate in lengthy, costly litigation to recover the insurance policy proceeds." 500 S.E. 2d at 318 (emphasis added). Thus, the policy underlying Hayseeds supports the conclusion that damages for aggravation and inconvenience should be available any time a first-party policyholder substantially prevails in a claim against his insurance carrier in litigation.

However, in its March 7, 2013 Order, the District Court found that the focus for determining whether Hayseeds damages are available is whether the policy at issue is "first-party insurance," rather than whether the plaintiff is a "first-party claimant." App. at pp. 215-220, 222-225. The Court explained that "first party insurance" and "first-party policyholders" are distinct concepts; the former refers to a type of insurance, while the latter refers to a type of claimant.[4] The District Court determined that damages for aggravation and inconvenience are only available in

---

[4] Per the District Court's explanation, "first party insurance" applies to damage to an insured or an insured's property (such as health insurance or fire insurance), while "third party insurance" applies to loss resulting from an insured's liability to a third party (such as the wrongful act liability policy at issue in this case). App. at pp. 215-218. Conversely, a "first party claimant" is one who sues his/her own insurer, while a "third party claimant" is one who sues a separate tortfeasor covered by an insurance policy. *See* Loudin v. Nat'l Liab. & Fire Ins. Co., 716 S.E.2d 696, 700-701 (W.Va. 2011); *see also* W. Va. C.S.R. § 114–14–2.3; W. Va. C.S.R. § 114–14–2.8.

12

cases involving "first party insurance," and that because the wrongful liability act policy at issue is "third party insurance," Graham is not entitled to such damages even if he is a "first party claimant." App. at pp. 215-220, 222-225.

The District Court erred in reaching this conclusion. The West Virginia Supreme Court of Appeals has made clear that the public policy behind awarding <u>Hayseeds</u> damages focuses on the type of claimant, rather than the type of insurance. As previously discussed, the Court observed in <u>Miller</u> that "[w]hen an insurance carrier refuses to pay any type of *first-party claim* . . . , the policyholder may be compelled to participate in lengthy, costly litigation to recover the insurance policy proceeds." 500 S.E.2d at 318 (emphasis added); *see also* <u>Hayseeds</u>, 352 S.E.2d at 79 ("[W]hen an insured purchases a contract of insurance, he buys insurance-not a lot of vexatious, time-consuming, expensive litigation with his insurer.") . In the words of the West Virginia Supreme Court of Appeals, "[t]he goal is for *all policyholders* to get the benefit of their contractual bargain: they should get their policy proceeds promptly without having to pay litigation fees to vindicate their rights." <u>Miller</u>, 500 S.E.2d at 319 (emphasis added).

This goal applies equally to all first-party policyholders, regardless of whether their policies are "first party insurance" or "third party insurance." Indeed, an insured who is forced to sue his insurer to vindicate his rights under a liability insurance

13

policy is no less deprived of the benefit of his contractual bargain, and suffers no less aggravation and inconvenience, than an insured who is forced to sue his insurer to vindicate his rights under a "first party insurance" policy. Thus, contrary to the District Court's conclusions, the West Virginia Supreme Court of Appeals has focused on the type of claimant when determining the availability of <u>Hayseeds</u> damages for aggravation and inconvenience, rather than the type of insurance.[5]

---

[5] In its Order, the District Court cited and distinguished the West Virginia Supreme Court of Appeals' decision in <u>Loudin v. Nat'l Liab. & Fire Ins. Co.</u>, 716 S.E.2d 696 (W.Va. 2011). While <u>Loudin</u> has no direct application to this case, it does support Graham's entitlement to relief. In <u>Loudin</u>, William Loudin accidentally backed a truck over his brother, Thomas Loudin. 716 S.E.2d at 698. Both Loudin brothers were insured under the same policy (which was issued in the name of Thomas Loudin), and the issue before the Court was whether Thomas should be considered a first-party or third-party claimant. The Court held that "when a named policyholder filed a claim with his/her insurer, alleging that a nonnamed insured under the same policy caused him/her injury, the policyholder is a first-party claimant in any subsequent bad faith action against the insurer arising from the handing of the policyholder's claim." <u>Id.</u> at 703.

The instant case does not involve an insured and a tortfeasor who are both insured under the same policy, and so the central holding in <u>Loudin</u> does not apply here. However, the <u>Loudin</u> Court held that Thomas Loudin was entitled to maintain a bad faith action based on its finding that he was a ***first-party claimant***, rather than focusing on the type of insurance. Furthermore, in reaching its decision, the <u>Loudin</u> Court relied in part on <u>Miller</u> and <u>Hayseeds</u>, observing that these cases "echo a firm public policy in this State to hold insurers accountable in a court of law when they wrongfully deny coverage to premium-paying insureds." <u>Id.</u> at 702-703. Here, National Union wrongfully denied coverage to its insured. Thus, <u>Loudin</u> strongly suggests that the West Virginia Supreme Court of Appeals would find that Graham is entitled to <u>Hayseeds</u> damages for aggravation and inconvenience in the instant case.

14

In reaching the conclusion that only policyholders of "first-party insurance" are protected by Hayseeds and Miller, the District Court relied heavily on the West Virginia Supreme Court of Appeals' opinion in Marshall v. Saseen, 450 S.E.2d 791 (W.Va. 1994). Marshall extended Hayseeds, which dealt with property insurance, to cases involving uninsured/underinsured motorist insurance, noting that "[t]he critical point" is that all of these types of insurance are "first party insurance." 450 S.E.2d at 797. However, it is clear that the Marshall Court was not using the term "first party insurance" in the same way that the District Court has used it. The Marshall Court stated that "[f]irst party insurance means that the insurance carrier has ***directly contracted with the insured to provide coverage*** and to reimburse the insured for his or her damages up to the policy limits." Id. (emphasis added). The Marshall Court further explained that "[t]he premise underlying Hayseeds was that the insurer had ***contractually promised*** the insured ... coverage." Id. (emphasis added); *see also* Elmore, 504 S.E.2d 893 (observing that "a Hayseeds type action is grounded on the existence of a contract between an insurer and its insured[.]")

Thus, it is clear that when the Marshall Court used the term "first party insurance," it was focusing on the insurer's first-party contractual relationship with

the insured.[6]   Indeed, in the accompanying discussion, the <u>Marshall</u> Court spoke about the policy rationale that a first-party claimant/policyholder is entitled to the benefit of his bargain without having to endure vexatious, time-consuming, and expensive litigation with his insurer. 450 S.E.2d at 797.   Finally, to the extent that <u>Marshall</u> implicates the District Court's concept of "first party insurance," rather than "first party claimants," it should be noted that <u>Miller</u> was decided after <u>Marshall,</u> and <u>Miller</u> makes clear that the policy rationale behind awarding  <u>Hayseeds</u> damages applies to "***any type of first-party claim***" with the goal of ensuring that "***all policyholders***" get the benefit of their contractual bargain. <u>Miller</u>, 500 S.E.2d at 318-19 (emphasis added).

In granting National Union's motion for partial summary judgment, the District Court seemingly disregarded the rationale and policy behind <u>Hayseeds</u>, and stated that it is unable to make West Virginia law based on a party's policy arguments.  App. at p. 225.  However, the District Court does have the authority to predict West Virginia law based on policies articulated by the state's highest Court.  This Court has

---

[6] In a subsequent case, the West Virginia Supreme Court of Appeals characterized its opinion in Marshall as follows: "[O]ur opinion in Marshall explained that uninsured and underinsured motorist coverage is essentially first party coverage. ***This is because the insurer***, through the insurance policy with its insured, ***has contracted to extend such coverage***." <u>Morrison v. Haynes</u>, 452 S.E.2d 394, 398 (W.Va. 1994)(emphasis added).

16

recognized that if state law is unclear as to a particular question, a federal court sitting in diversity jurisdiction must predict the decision of the state's highest court. <u>Wells v. Liddy</u>, 186 F.3d 505, 527-28 (4th Cir. 1999). In forecasting the decision of the state's highest court, a federal court "can consider, inter alia: canons of construction, restatements of the law, treatises, ***recent pronouncements of general rules or policies by the state's highest court***, well considered dicta, and the state's trial court decisions." <u>Id.</u> (emphasis added).

In this case, the public policy of the state is well established. The West Virginia Supreme Court of Appeals has long adhered to the public policy that "***all policyholders*** should get the benefit of their contractual bargain" without having to sue their insurer, and that insurers who wrongfully deny coverage are liable for damages for aggravation and inconvenience. *See* <u>Miller</u>, 500 S.E.2d at 319 (emphasis added). This policy was reaffirmed as recently as 2011, when the Court recognized that "[t]he observations in <u>Miller</u> and <u>Hayseeds</u> echo a firm public policy in this State to hold insurers accountable in a court of law when they wrongfully deny coverage to premium-paying insureds." *See* <u>Loudin</u>, 716 S.E.2d at 702-703. Pursuant to this Court's holding in <u>Wells</u>, the District Court should have considered this firm public policy in predicting how the West Virginia Supreme Court of Appeals would answer the question of whether Graham is entitled to <u>Hayseeds</u> damages based on National

17

Union's breach of its duty to defend Graham under the wrongful act liability policy.

In the case at bar, Graham was an insured under a Wrongful Act Liability insurance policy, duly paid for by his employer. The State sued him. Graham tendered the defense to National Union; National Union refused to provide a defense. Graham prevailed in the underlying action and had to sue National Union to recover the benefits he was entitled to under the insurance contract. Again, National Union denied any responsibility to cover Graham in the underlying action. This Court concluded National Union was wrong. The Wrongful Act Liability insurance policy was purchased for peace of mind and security, not only for indemnity for third-party claims, but the assurance that an insured will not have to incur substantial costs in personally defending such claims.[7] In this regard, Mr. Graham is no different from

---

[7] In West Virginia, an insurance company's duty to defend is broader than its duty to indemnify. *See* Bowyer v. Hi-Lad, Inc., 609 S.E.2d 895, 912 (W.Va. 2004). Indeed, "the ordinary liability policy . . . obligates the insurer to defend even though the suit is groundless, false, or fraudulent." Tackett v. Am. Motorists Ins. Co., 584 S.E.2d 158, 163 (W.Va. 2003). Furthermore, "if part of the claims against an insured fall within the coverage of a liability insurance policy and part do not, the insurer must defend all of the claims, although it might eventually be required to pay only some of the claims." Id. In other words, the duty to defend and/or pay for defense costs is a specific benefit that may be included in an insurance contract. Where an insured purchases a policy that includes this type of benefit, part of the insured's premium goes toward paying for that benefit. Thus, when an insurer wrongfully denies that benefit, it implicates this State's firm public policy to hold insurers accountable in a court of law when they wrongfully deny coverage to premium-paying insureds. *See* Loudin, 716 S.E.2d at 702-703.

18

an insured under a property insurance policy. Just like an insured under a property insurance policy, Mr. Graham should get the benefit of the insurance contract without having to sue to vindicate his rights. Nevertheless, he was forced to endure the defense of the underlying case at his own expense for more than five years, and then litigate the instant case against his insurer for the last three years to vindicate his rights under the subject policy. Because the public policy for awarding damages for aggravation and inconvenience in this case is the same as that in <u>Hayseeds</u> and its progeny, the result should be the same as well.

Indeed, if the goal is for "all policyholders" to get the benefit of their bargain without having to sue their insurer, it makes no sense to hold that certain policyholders (*i.e.* liability insurance policyholders) are not entitled to damages for aggravation and inconvenience. To deny such damages to liability insurance policyholders is tantamount to holding that such policyholders are less entitled to the benefit of their contractual bargain than policyholders under other types of policies (*i.e.* property insurance). Surely the West Virginia Supreme Court of Appeals did not intend such a result. Accordingly, the District Court erred in concluding that Graham is not entitled to damages for aggravation and inconvenience.

19

**III.  THE DISTRICT COURT ERRED IN CONCLUDING THAT GRAHAM IS NOT ENTITLED TO PREJUDGMENT INTEREST ON HIS SPECIAL DAMAGES FOR BREACH OF CONTRACT.**

Under West Virginia law, the availability of prejudgment interest is governed by W.Va. Code § 56-6-31, which provides for prejudgment interest on "special damages," including "lost wages and income, medical expenses, damages to tangible personal property and similar out-of-pocket expenditures, as determined by the court." In applying this statute, the West Virginia Supreme Court of Appeals has held that prejudgment interest "is to be recovered" on special or liquidated damages if the amount of such damages is certain or reasonably ascertainable. Grove v. Myers, 382 S.E.2d 536, 544-545 (W.Va. 1989). In the instant case, not only is the amount of Graham's special damages reasonably ascertainable, it has already been determined: National Union has conceded that it owes Graham $208,705.17 in special damages based on National Union's failure to defend Graham against the State's lawsuit. App. at p.170.

In holding that Graham was not entitled to prejudgment interest, the District Court stated that State ex. rel. Chafin v. Mingo County Comm'n, 434 S.E.2d 40 (W.Va. 1993) "suggests" that the West Virginia Supreme Court of Appeals would not apply prejudgment interest to an insured's special damages where such damages are comprised of attorney fees incurred as a result of his insurer's breach of its contractual

20

duty to defend. App. at pp. 220-221, 226-227. However, Chafin makes no such suggestion. In Chafin, Mingo County Commissioner Truman Chafin sued the Mingo County Commission seeking reimbursement of the attorney fees and expenses he incurred in successfully defending against criminal bribery charges. 434 S.E.2d at 41-42. While the Chafin Court declined to make prejudgment interest available on attorney fees in the context of a public official seeking reimbursement of said attorney fees from public funds, Chafin was not a breach of contract action, nor were there any insurance obligations at issue. Indeed, the Chafin Court gave no indication that prejudgment interest would not be available on attorney fees where such fees comprised an insured's special damages in a breach of contract action. To the contrary, the Chafin Court specifically observed that prejudgment interest "has traditionally been applicable . . . to contract actions." Id. at 44.

Moreover, the West Virginia Supreme Court of Appeals has *never* held or otherwise indicated that its mandate that prejudgment interest "is to be recovered" on reasonably ascertainable special damages does not apply in a breach of contract action where the special damages happen to be comprised of attorney fees. If National Union had breached a duty to pay Graham's medical expenses, rather than legal expenses, there would be no question that Graham would be entitled to prejudgment interest. There is no rational basis to make a distinction between these

21

nearly identical examples of special damages. They are both expenses for professional services owed to a plaintiff by virtue of a contract. None of the cases cited by National Union and/or the District Court regarding the unavailability of prejudgment interest on attorney fees involved situations where the attorney fees were special damages in a contract case and the amount of the fees was calculated and undisputed. The West Virginia Supreme Court of Appeals has not addressed this precise issue, but its general holding that prejudgment interest is to be awarded on reasonably ascertainable special damages should control.

Furthermore, courts in many other jurisdictions have held that prejudgment interest should be awarded on attorney fees incurred as a result of an insurer's breach of its duty to defend, if the amount of the fees is reasonably ascertainable. *See e.g.* Simmental Ass'n v. Coregis Ins. Co., 282 F.3d 582, 591 (8th Cir. 2002); Bradley Corp. v. Zurich Ins. Co., 984 F. Supp. 1193, 1206 (E.D. Wis. 1997); Hi-Mill Mfg. Co. v. Aetna Cas. & Sur. Co., 884 F. Supp. 1109, 1113-14 (E.D. Mich. 1995); Sherwin-Williams Co. v. Certain Underwriters at Lloyd's London, 813 F. Supp. 576, 590 (N.D. Ohio 1993); S. Farm Bureau Cas. Ins. Co. v. Watkins, 386 S.W.3d 6, 12 (Ark. 2011); Seaway Port Auth. of Duluth v. Midland Ins. Co., 430 N.W.2d 242, 252

(Minn. Ct. App. 1988).[8]  As one such court observed,

> 'Payment of prejudgment interest not only compensates the prevailing party but also liability for prejudgment interest may act as an incentive to the insurer to promptly settle a meritorious claim. Without such an incentive, the insurer may refuse to settle a meritorious claim in hopes of forcing plaintiff to settle for less than the claim's true value. The insurer risks nothing.'. . . . In addition, defendant, a sophisticated insurance company, is undoubtedly aware of the potential consequences when it makes an affirmative decision not to defend. In Michigan, an insurer has two options when faced with a notice of claim: 'It can undertake the defense with notice to the insured that it is reserving the right to challenge its liability on the policy. The second alternative for the insurer is to repudiate liability, refuse to defend and take its chances that there will be a showing that there is no coverage for the insured's liability.'  If an 'insurer refuses to defend, it must do so at its peril, and if the insurer guesses wrong, it must bear the consequences of its breach of contract.'  Plaintiff presented defendant with its notice of claim more than six years ago.  At that time, defendant had a choice of providing coverage under a reservation of rights, or refusing to defend. Defendant was surely cognizant of . . . the potential consequences of its decision not to defend at the onset of this litigation.

Hi-Mill Mfg. Co., 884 F.Supp. at 1113-1114.

In the present case, Graham presented National Union with its notice of claim

nine years ago.  As in Hi-Mill Mfg. Co., National Union had the option of defending

Graham under a reservation of rights letter, but instead simply refused to defend

---

[8] To the extent these courts disagree as to precisely when prejudgment interest should begin to run against an insurer who wrongfully fails to defend on a claim against an insured, the West Virginia Supreme Court of Appeals has already resolved this question.  In Grove, the Court held that "prejudgment interest on special or liquidated damages is calculated from the date on which the cause of action accrued[.]."  382 S.E.2d at 542-545.

23

Graham and take its chances.[9]  National Union should not be absolved of the risk it took in making that decision.  Thus, the District Court erred in concluding that Graham is not entitled to prejudgment interest on his special damages for breach of contract.[10]

## CONCLUSION

As set forth above, the District Court erred in granting summary judgment to National Union, and denying partial summary judgment to Graham, based on the Court's conclusions that Graham is not entitled to damages for aggravation and inconvenience, nor prejudgment interest on his special damages. Wherefore, Graham respectfully asks this Court to (1) reverse the District Court's Order granting

---

[9] In doing so, National Union has had the beneficial use of more than $200,000 for the last nine years.

[10] National Union argued below that even if Graham is entitled to prejudgment interest, such interest should be limited to the actual payments that Graham made out of his own pocket for attorney fees, and should not apply to fees incurred but not actually paid as of the date of trial.  Although the District Court did not address this issue in its Order, it should be noted that the West Virginia Supreme Court of Appeals has addressed this precise issue, and rejected National Union's position. *See* Grove, 382 S.E.2d at 543-45 (holding that "prejudgment interest is to be recovered on special or liquidated damages incurred by the time of the trial, whether or not the injured party has by then paid for the same."). Thus, if this Court rules that Graham is entitled to prejudgment interest, then he is entitled to recover such interest on the entirety of the attorney fees and costs he incurred in defending against the State's lawsuit, regardless of whether he has personally paid for the same by the date of trial.

summary judgment in favor of National Union and denying partial summary judgment in favor of Graham; (2) hold that Graham is entitled to damages for aggravation and inconvenience, as well as prejudgment interest on his special damages; and (3) remand the case back to the District Court for a trial on the amount of aggravation and inconvenience damages owed to Graham.

## REQUEST FOR ORAL ARGUMENT

Graham requests the opportunity to present his case at oral argument because the instant appeal presents issues of first impression.

Respectfully Submitted,

ROBERT E. GRAHAM

By Counsel,

  /s/ Michael W. Carey
Michael W. Carey, WVSB No. 635
John A. Kessler, WVSB No. 2027
David R. Pogue, WVSB No. 10806
Carey, Scott, Douglas & Kessler, PLLC
901 Chase Tower
707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
(304) 345-1234
mwcarey@csdlawfirm.com
jakessler@csdlawfirm.com
drpogue@csdlawfirm.com

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1517    Caption:  Robert E. Graham v. National Union Fire Insurance Co. of Pittsburgh, PA.

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) OR 32(a)**
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

*[Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines; Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines; any Reply or Amicus Brief may not exceed 7,000 words or 650 lines; line count may be used only with monospaced type]*

[X]    this brief contains  6232  *[state the number of]* words, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii), *or*

[ ]    this brief uses a monospaced typeface and contains _____ *[state the number of]* lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

*[14-point font must be used with proportional typeface, such as Times New Roman or CG Times; 12-point font must be used with monospaced typeface, such as Courier or Courier New]*

[X]    this brief has been prepared in a proportionally spaced typeface using WordPerfect, Version  10  *[state name and version of word processing program]* in  14 point, Times New Roman  *[state number of characters per inch and name of type style]* ; or

[ ]    this brief has been prepared in a monospaced typeface using _____ *[state name and version of word processing program]* in _____ *[state font size and name of the type style]*.

 /s/ Michael W. Carey_____
Michael W. Carey, WVSB No. 635

Attorney for Appellant

Dated:  __May 31, 2013_____

RECORD NO. 13-1517

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

ROBERT E. GRAHAM,

*Plaintiff-Appellee,*

v.

NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.,

*Defendant-Appellant.*

## CERTIFICATE OF SERVICE

I, Michael W. Carey, do hereby certify that on the 31st day of May, 2013,

I have served the foregoing **"Opening Brief of Appellant"** with the Clerk of Court

using the CM/ECF system which will send notification of such filing to the following

participants:

> **DON C. A. PARKER**
> **GLEN A. MURPHY**
> **Spilman Thomas & Battle, PLLC**
> **Spilman Center**
> **300 Kanawha Boulevard, East**
> **P.O. Box 273**
> **Charleston, West Virginia 25321**
> dparker@spilmanlaw.com
> gmurphy@spilmanlaw.com

and by hand delivering such filing to the address noted above.

/s/ Michael W. Carey
Michael W. Carey, WVSB No. 635